JULIA LYN CLEVELAND, Plaintiff-Appellee, *v.* MICHAEL EDWARD CLEVELAND, Defendant-Appellant .

NO. 6084

SEPTEMBER 9, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Michael Edward Cleveland (Father), defendant below, appeals from portions of an October 2, 1975 order of the Second Circuit Family Court. The order resolved issues of child custody and support reserved in the Decree of Absolute Divorce entered by the same court on July 18, 1975 and issues raised by a post-decree order requiring appellant to show cause why he should not be held in contempt for failing to comply with a provision in the decree which ordered him to vacate the real property divided between the parties as tenants in common.

The primary issue is whether the trial court abused its discretion in ordering Father to pay $100.00 per month child support. We hold that the trial court did not abuse its discretion.

After the parties married on June 10, 1966, Father attended law school. Julia Lyn Cleveland (Mother) was employed, primarily as a social worker. After he graduated with honors in June of 1969, Father secured employment as an attorney with a Maui law firm. The minor children of the parties were born in March of 1969 and August of 1970. The parties purchased a home in Haiku, Maui, in 1970. In 1971, Father established his own legal practice. In 1972, his legal practice failing, Father taught for one semester at Maui Community College. Also in 1972 the parties purchased, by agreement of sale, in Mother's name only, a one-third (1/3) undivided interest in a 21-acre parcel of land in Huelo, Maui. Intending to develop a self-sufficient homestead, the parties built a house and a separate guest cottage. The Haiku home was sold. Closing did not occur until 1974, at which time the Huelo agreement of sale was satisfied. Well before the filing of the divorce action Father had discontinued the practice of law. The parties worked on the Huelo land to improve its suitability for agriculture.

On October 15, 1974, Mother filed a Complaint for Divorce and an Order to Show Cause for Relief Pendente Lite and Temporary Restraining Order. The temporary relief she requested included an order requiring Father to vacate and remain away from the Huelo property, an injunction restraining him from molesting or annoying her, or disturbing her peace, and custody of the children.

On October 23, 1974, a hearing was held before Judge Richard R. Komo on the Order to Show Cause for Relief Pendente Lite and Temporary Restraining Order. The only contested issue was whether Father should be ordered to vacate the Huelo property. He was at that time living in the guest house. The other house was occupied by Mother and the children. The court ordered Father to vacate and remain away from the house occupied by Mother and the children, but allowed him to continue residing in the guest house.

On July 11 and July 16, 1975, hearings on the Complaint for Divorce were held before Judge Kase Higa.

On July 18, 1975, a Decree of Absolute Divorce was filed. The decree awarded the Huelo property five-sevenths (5/7) to

Mother and two-sevenths (2/7) to Father, and it required Father to vacate the Huelo property on or before August 15, 1975. The issues of child custody and child support were reserved for future determination.

On August 21, 1975, Mother filed an Order to Show Cause After Order or Decree, alleging that Father had refused to vacate the property and seeking a finding that he was in contempt of court. A hearing on the order to show cause and on the custody and support issues reserved in the decree was held on September 10, 1975 before Judge Higa. By this time, Father had remarried. He and his new wife, who was then pregnant, and her son were living in the guest house.

On October 2, 1975, the order which is the subject of this appeal was filed. The order granted custody of the children to Mother, ordered Father to pay $100.00 per month in child support, in equal semi-monthly installments commencing October 1, 1975, found Father in contempt of court for not leaving the Huelo property on or before August 15, 1975, but deferred imposition of a penalty for one year, and ordered Father to leave the premises at Huelo on or before October 15, 1975.

On October 6, 1975, Father filed a notice of appeal from the July 18, 1975 decree and the October 2, 1975 order. In *Cleveland v. Cleveland,* 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court dismissed the appeal with respect to the July 18 decree as untimely, but held that the appeal was timely as to the October 2, 1975 order. The court struck the portions of Father's opening brief relating to the July 18 decree and instructed Mother to file an answering brief.

The Hawaii Supreme Court's prior decision bars Father from challenging the validity of the original order to vacate the Huelo premises, since that order was contained in the July 18 decree. The portion of the October 2 order requiring him to vacate by October 15 is within the authority granted to district family judges by section 571-8.5, Hawaii Revised Statutes (HRS), which provides, *inter alia,* that district family judges may "enforce decrees of the family court of its judicial circuit". Subsection (a)(6) of HRS section 571-8.5. We find no

error in the application of the court's authority on the record before us.

Father contends that the trial court abused its discretion by ordering him to pay $100.00 per month in child support commencing October 1, 1975.

The record indicates that Father's financial status changed in the course of the divorce action. At the July hearing, he testified that he was a self-sufficient farmer and herb grower, although he had under cultivation a quarter of an acre, at most. He also had $75.00 a month cash income from rent paid to him by his then future wife, which took care of the rest of his expenses, and was expecting additional seasonal cash income from the sale of papayas and medicinal herbs. He was also receiving an unspecified amount of food stamps. Although Father testified that he would accept a "proper offer" for legal work and that he was registered with the State Employment Service, it appears that he was not then actively seeking employment as an attorney and preferred farming. He estimated the value of the seven-acre Huelo property at $100,000.00, less whatever the market would subtract for the fact that the seven acres was a one-third (1/3) undivided interest in a 21-acre parcel. At no time did he testify about his specific actual expenses or submit written asset/debt or income/expense statements.

At the September hearing, Father testified that neither he nor his new wife were then receiving any aid from the Department of Social Services (DSS). He was earning $40.00 gross per week at a part-time gardening job, was receiving an unspecified amount from the sale of papayas and was trading produce for other needed foodstuffs. He had an advertisement running in a local newspaper for work and hoped to get either a full-time job or another part-time one, in which case he would feel that he had more than enough money for himself and his family. Apparently based on his hope to remain on the Huelo land, and/or to secure additional employment, he testified that he was "entirely ready to support the children completely".

At the July hearing, Mother testified that her source of income was assistance from the DSS. Her DSS grant was

$192.00. She also testified that she had leased three of the seven acres at Huelo on lifetime leases to two separate groups of friends. It does not appear that she then was receiving any monthly income from the leases. At the September hearing, she testified that one of the leases called for annual cash sums which were to become due beginning in January of the next year, *i.e.* 1976. She did not then specify the amount expected.

The court made no formal findings of fact upon entering its October 2 order.[1] At the September hearing, the court recognized that ordering Father to vacate the Huelo property might result in his having to seek public assistance. Judge Higa indicated that although Father was "not making any money now", he was beginning "to rehabilitate himself" and would "eventually begin making money". The judge also recognized that the two-sevenths' (2/7) property interest awarded to Father could amount to "quite a bit of money" although there would be "legal problems" the parties would have to contend with, presumably a reference to any future attempts by Father to liquidate his interest, since legal title was still in Mother's name only and her interest was itself undivided.

In pertinent part, section 580-47, HRS, then provided that:

> Upon granting a divorce, the court may make such further orders as shall appear just and equitable compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties. . . . In making such further orders, the court shall take into consideration the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case. . . .

Father urges us to hold that a child support order must be based on the payor's "present ability" to pay, but does not

---

[1] Hawaii Family Court Rule 52(a), effective February 15, 1977, requires the court, upon notice of appeal filed with the court, to enter its findings of fact and conclusions of law where none has been entered.

indicate whether this means current earned income, available cash reserves, other liquid assets, non-liquid assets or potentially available income or assets, or a combination of the foregoing. He contends that the support order entered is grossly unjust, inequitable, and contrary to the mandate of section 580-47, HRS. He cites cases from other jurisdictions in which particular amounts of support ordered were held to be erroneous. *See, e.g. In re Marriage of Crabtree*, 523 P.2d 471 (Colo. App. 1974), *Bowers v. Bowers*, 192 Wash. 676, 74 P.2d 229 at 230 (1937). There appear to be no similar reported Hawaii appellate court decisions, nor any indicating whether child support must be based on present ability to pay, however that term is defined.

We hold that in ordering child support, the family court may consider what the payor is capable of earning if the payor attempts in good faith to secure proper employment, where the payor is temporarily unemployed or is engaged in work from which the payor does not receive the amount he or she is capable of earning in other fields of endeavor. *Pencovic v. Pencovic*, 45 Cal. 2d 97, 287 P.2d 501 (1955), *Mowery v. Mowery*, 38 N.J. Super 92, 118 A.2d 49 (1955). *Cf. Richards v. Richards*, 44 Haw. 491, 517, 355 P.2d 188 (1960).

We further hold that the court may consider the size of the payor's estate and his or her net worth. *Straub v. Straub*, 213 Cal. App. 2d 792, 29 Cal. Rptr. 183 (1963); *Wonneman v. Wonneman*, 305 S.W.2d 71, 82 (1957).

A careful examination of the record in this case does not lead us to the irrefragable conclusion that all objective appraisals of the evidence would result in a finding different than that made by the trial court, which is the prerequisite standard for an appellate court to find abuse of discretion. *First Hawaiian Bank v. Smith*, 52 Haw. 591, 483 P.2d 185 (1971). Accordingly, we hold that the trial court did not abuse its discretion in ordering appellant to pay $100.00 per month support commencing October 1, 1975. In doing so, we stress that each case is different and must be decided upon a consideration of all pertinent facts and circumstances.

Finally, appellant contends that the conduct of appellee's trial counsel and the "prejudicial attitude" of the trial judge

prevented him from having a fair and impartial hearing on the issues. Divorce litigation is often not decorous. We have examined the record carefully and find these contentions without merit.

Affirmed.

*Michael E. Cleveland*, defendant-appellant, pro se *(William L. Kohne* on opening brief).

*Rai Saint Chu* for plaintiff-appellee.