**\*\*  FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER  \*\***

**Electronically Filed
Supreme Court
SCWC-19-0000050
19-JUN-2020
02:54 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

---

ESTATE ADMINISTRATIVE SERVICES LLC, Interim Personal
Representative for the Estate of Philip Finn,
Respondent/Plaintiff-Appellee,

vs.

SIONE P. MOHULAMU, FALAULA TINOGA, SR., and SAMANTHA KALIKO,
Respondents/Defendants-Appellees,

and

CHRISTY TIGILAU,
Petitioner/Defendant-Appellant.

---

SCWC-19-0000050

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000050; CASE NO. 1RC181008145)

JUNE 19, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This certiorari proceeding arises out of the Intermediate Court of Appeals' ("ICA") dismissal of a January 23, 2019 appeal filed by Christy Tigilau ("Tigilau").  Tigilau appealed a judgment and writ of possession filed on January 10, 2019 by the District Court of the First Circuit, Wai'anae Division ("district court") in an ejectment case.[1]

Pursuant to Hawai'i Revised Statutes ("HRS") § 607-3 (2016), Hawai'i state courts have discretionary power to waive the prepayment of court costs where payment appears onerous.[2]  Court rules also provide judges with discretion to waive costs,

---

[1]    According to Queen Emma Found. v. Tingco, 74 Haw. 294, 300 n.5, 845 P.2d 1186, 1189 n.5 (1992):

> Ejectment is a common law action once used to recover possession of land and for damages for the unlawful detention of its possession.  The lessor or real party in interest had to establish title in order to warrant recovery.  The common law action for ejectment has been modified by statute in many states and may come under the title of action for summary process, action for eviction, or forcible entry and detainer actions.  See Black's Law Dictionary 516 (6th ed. 1990).

74 Haw. at 300 n.5, 845 P.2d at 1189 n.5.  According to Hawai'i Revised Statutes § 604-6 (2016), district courts have jurisdiction over ejectment proceedings where title to real estate does not come in question.

[2]    HRS § 607-3 (2016) states, "The judges of all the courts of the State shall have discretionary power to waive the prepayment of costs or to reduce or remit costs where, in special or extraordinary cases, the cost of any suit, action, or proceeding may, to the judges, appear onerous."

including Hawai'i Rules of Appellate Procedure Rule ("HRAP") Rule

24 (2016),[3] which provides in relevant part as follows:

> **(a) Leave to proceed on appeal *in forma pauperis* from the . . . district . . . court . . . to the Hawai'i appellate courts.**  A motion for leave to proceed on appeal *in forma pauperis* from the . . . district . . . court . . . shall ordinarily be made in the first instance to the court . . . appealed from.
>
> A party to an action in the . . . district . . . court . . . who desires to proceed on appeal *in forma pauperis* may file in the appellate court a motion for leave to so proceed.  The motion shall be accompanied by an affidavit or declaration, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay the required filing fees or to give security for costs, the party's belief that [the party] is entitled to redress, and a statement of the issues that the party intends to present on appeal.  If the appeal is from a court, the motion shall show that application to the court appealed from for the relief sought is not practicable . . . .
>
> . . . .
>
> **(c) Effect of denial of motion for leave to proceed in forma pauperis.**  If the motion to proceed in forma pauperis is denied the movant shall, within 10 days after the denial of such a motion, pay all unpaid filing fees and shall give security for costs.  Failure of the unsuccessful movant to pay the unpaid filing fees or to give security for costs shall not affect the validity of the appeal, but is ground for such action as the appellate court having jurisdiction over the appeal deems appropriate, and may include dismissal of the appeal.

Tigilau filed two motions to proceed in forma pauperis

("IFP") on appeal to the ICA.  The first motion provided little

information regarding Tigilau's financial status, but the second

---

[3]     Other rules include Rule 2.2(19) (2013) of the Rules of the Circuit Courts of the State of Hawai'i and Rule 2.2(13) (2013) of the Rules of the District Courts of the State of Hawai'i, which both provide in part that "[t]he court may waive costs and fees for good cause shown."

motion provided much greater detail.  In denying both motions, the ICA ordered Tigilau to follow the portion of HRAP Rule 24(a) stating that "[a] motion for leave to proceed on appeal [IFP] . . . shall ordinarily be made in the first instance to the court . . . appealed from."  The ICA ordered Tigilau to either file an IFP motion in the district court within ten days or pay the filing fees in full.  The ICA also did not address whether requiring Tigilau to pay the filing fees would be onerous under HRS § 607-3.  After Tigilau did not file an IFP motion or pay filing fees within ten days of the second order, on June 20, 2019, the ICA dismissed Tigilau's appeal on that basis.

Tigilau is a self-represented defendant appealing a writ of possession in a residential ejectment case.  We hold that, under the circumstances, the ICA abused its discretion in ordering Tigilau to file IFP motions in the district court, in denying Tigilau's second IFP motion based on HRS § 607-3 and HRAP Rule 24, and then in dismissing her appeal.  We further hold that, consistent with the fundamental tenet of Hawai'i law that submissions of self-represented litigants should be interpreted liberally, see Waltrip v. TS Enters., Inc., 140 Hawai'i 226, 239, 398 P.3d 815, 828 (2016), when courts have discretion in applying court rules or statutes, they must consider the access

4

to justice principle of reducing barriers to the civil justice system for self-represented litigants.

We therefore vacate the ICA's June 20, 2019 "Order Dismissing Appeal," grant Tigilau's motion to this court for IFP status on appeal, and remand this case to the ICA for further proceedings consistent with this opinion.

## II. Background

### A. District court proceedings

On December 7, 2018, Estate Administrative Services, LLC, Interim Personal Representative for the Estate of Philip Finn ("Estate Services") filed a complaint for ejectment in district court. The complaint alleged that Philip Finn was the owner of a property and that various people, including Tigilau, were occupying the property without a rental agreement or an ownership interest in the property and refused to vacate. After various proceedings, on January 10, 2019, the district court entered a judgment for possession and issued a writ of possession as to Tigilau. On January 20, 2019, Tigilau was served with the judgment for possession and writ of possession, as well as notice of Estate Services' intent to execute the writ of possession. On February 13, 2019, Tigilau was removed from the property by deputy sheriffs.

5

## B.    ICA proceedings

On January 23, 2019, Tigilau filed a notice of appeal in the ICA.

Tigilau filed a motion to proceed IFP along with her notice of appeal, stating that she could not afford the costs of the appeal ("first IFP motion").[4]  On January 25, 2019, the ICA entered an order denying Tigilau's first IFP motion.  The order stated in relevant part:

> (2)    "A motion for leave to proceed on appeal [IFP] . . . shall ordinarily be made in the first instance to the court . . . appealed from."  HRAP Rule 24(a).  Exceptions exist if the motion shows "that application to the court appealed from for the relief sought is not practicable, or that the court appealed from has denied an application, or has failed to afford the requested relief, with the reasons given by the court appealed from for its action."  Id.; and
>
> (3)    Tigilau fails to demonstrate compliance with HRAP Rule 24(a), or that any exceptions apply here.
>
> Therefore, IT IS HEREBY ORDERED that the motion is denied without prejudice to Tigilau seeking relief in the underlying case, as follows:
>
> (1)    Within ten (10) days from the date of this order, Tigilau shall either (i) file in the underlying case a motion for leave to proceed

---

[4]    In deciding whether an IFP motion should be granted, with the obvious exception of a lack of subject matter jurisdiction, it is an abuse of discretion for a court to address the merits of the legal issues a party seeking IFP status seeks to raise.  See Blaisdell v. Dep't of Pub. Safety, 113 Hawai'i 315, 320-21, 151 P.3d 796, 801-02 (2007).  We therefore do not address the merits of Tigilau's defenses in the district court or the issues she seeks to raise on appeal.

6

> on appeal [IFP] that complies with HRAP Rule
> 24(a), or (ii) pay the filing fees in the full
> amount to the Supreme Court Clerk's Office.
> Failure to file in the underlying case a motion
> for leave to proceed on appeal [IFP] or pay the
> filing fees may result in the appeal being
> dismissed.  See HRAP Rule 24(c)[.]

Thus, the ICA ordered Tigilau to file an IFP motion in the district court or pay the filing fee within 10 days.  She did neither.  Instead, on February 7, 2019, Tigilau filed a second motion for leave to proceed on appeal IFP in the ICA ("second IFP motion").  This time, Tigilau submitted a notarized Form 4 to the HRAP, an "Affidavit to Accompany Motion for Leave to Appeal [IFP]."  In the affidavit, Tigilau attested under oath that January 6, 2011 had been the last date she had been employed and that her monthly wage at the time had been $560.00.  She also attested that she had not received any income within the last twelve months; she did not have any cash or a checking or savings account; and she did not own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing).

On June 4, 2019, the ICA entered an order denying Tigilau's second IFP motion.[5]  The ICA denied the second IFP motion on the

---

[5]    In the meantime, Tigilau filed a jurisdictional statement on February 7, 2019, and another jurisdictional statement and a motion for a thirty-day extension to file her opening brief on May 20, 2019.  The district court

(continued. . .)

**  FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER  **

same grounds as the first, and again ordered Tigilau to file an

IFP motion in the district court or pay the filing fees within

ten days or risk dismissal of her appeal.[6]  The ICA stated in

relevant part:

> (1)  On January 25, 2019, the court denied Tigilau's
> January 23, 2019 motion for leave to proceed on appeal
> [IFP] without prejudice to her seeking relief in the
> underlying district court case . . . because she did not
> demonstrate that she first sought relief in the underlying
> case, consistent with [HRAP Rule 24(a)] or that any
> exceptions applied;
>
> (2) Tigilau again seeks leave to proceed on appeal
> [IFP];
>
> (3)  "A motion for leave to proceed on appeal
> [IFP] . . . shall ordinarily be made in the first instance
> to the court . . . appealed from."  HRAP Rule 24(a).
> Exceptions exist if the motion shows "that application to
> the court appealed from for the relief sought is not
> practicable, or that the court appealed from has denied an
> application, or has failed to afford the requested relief,
> with the reasons given by the court appealed from for its
> action."  Id.  Again, Tigilau fails to demonstrate
> compliance with HRAP Rule 24(a), or that any exceptions
> apply here;[7]

---

(continued. . .)
clerk filed a record on appeal and amended records on appeal on February 27
and 28, and May 23, 2019.

[6]    Both orders of denial also did not give Tigilau the option of stating
whether filing a motion in the district court would not be practicable, as
provided by HRAP Rule 24(a).

[7]    The ICA also stated as follows, which is not relevant based on
Blaisdell, supra note 4, and which, in any event, was not a basis upon which
Tigilau's appeal was eventually dismissed, as the dismissal was based solely
on Tigilau's alleged failure to comply with HRAP Rule 24:

> (4)  In addition, Tigilau is required to serve a filed copy
> of the notice of appeal on each other party, and file a
> proof of service within seven days after filing the notice
> of appeal.  HRAP Rule 3(e)(1).  Further, Tigilau is
> required to serve all other parties with all documents she

(continued. . .)

. . . .

> Therefore, IT IS HEREBY ORDERED that the Motion is denied without prejudice to Tigilau seeking relief in the underlying district court case . . . as follows:
>
> > (1)  Within ten (10) days from the date of this order, Tigilau shall either (i) file in the underlying case a motion for leave to proceed on appeal [IFP] that complies with HRAP Rule 24(a), or (ii) pay the filing fees in the full amount to the Supreme Court Clerk's Office.  Failure to file in the underlying case a motion for leave to proceed on appeal [IFP] or pay the filing fees may result in the appeal being dismissed.  See HRAP Rule 24(c)[.[8]]
> > . . . .

Tigilau did not pay the appellate filing fee or file a motion for leave to proceed on appeal IFP in the district court case within ten days.[9]  Then, on June 20, 2019, the ICA entered

_____

(continued. . .)
        files in this appeal, and file proof of service of the documents.  See HRAP Rule 25(b)-(d).  The record does not reflect that Tigilau served Defendants-Appellees Sione P. Mohulamu, Falaula Tinoga, Sr., or Samantha Kaliko with the notice of appeal, the instant Motion, or any other documents she filed in this appeal.

[8]     The ICA furthered ordered as follows, which is not relevant to the issues in this certiorari proceeding, see supra notes 4 and 7:

> IT IS FURTHER ORDERED that within ten days from the date of this order, Tigilau shall file a certificate of service, consistent with HRAP Rule 25(b) through (d), indicating she served Defendants-Appellees Sione P. Mohulamu, Falaula Tinoga, Sr., and Samantha Kaliko with filed copies of every document she filed in this appeal.  Failure to timely comply with this order may result in sanctions.

[9]     On June 18, 2019, in response to the portion of the ICA's order discussed in note 7, supra, Tigilau filed a motion requesting the addresses of all the other named defendants.  Tigilau explained that she needed
                                                        (continued. . .)

9

an "Order Dismissing Appeal."[10]  In this order, the ICA repeated the procedural history above regarding Tigilau's motions to proceed IFP.  The ICA stated in relevant part as follows:

> (8)  On June 4, 2019, the court, among other things, denied Tigilau's February 7, 2019 motion for leave to proceed [IFP] again without prejudice to Tigilau, within ten days from the order, either filing in the underlying case a motion for leave to proceed on appeal [IFP] that complied with HRAP Rule 24(a), or paying the filing fees in the full amount. . . .  The court again cautioned Tigilau that "[f]ailure to file in the underlying case a motion for leave to proceed on appeal [IFP] or pay the filing fees may result in the appeal being dismissed.  See HRAP Rule 24(c);"
>
> (9)  Tigilau has not paid the filing fees, filed in the underlying case a motion for leave to proceed on appeal [IFP], or taken any further action in this appeal.[11]  Consistent with the

---

(continued. . .)
addresses for Sione P. Mohulamu, Falaula Tinoga, Sr., and Samantha Kaliko in order to serve them, in compliance with the ICA's order.  Tigilau included a declaration stating the following:

> (1)  That I am not a lawyer;
> (2)  That I was only defending myself;
> (3)  That I have not been given adequate, effective and meaningful access to any of the courts in the State of Hawaii.
> (4)  That I need the addresses of Sione P. Mohulamu, Falaula Tinoga Sr., Samantha Kaliko to gain adequate, effective and meaningful access to this Honorable Court.

[10]  Although no stipulation existed, the document signed by the ICA was actually captioned "Order Approving Stipulation to Dismiss Appeal."  On July 12, 2019, a single-judge order was entered correcting the title of the document to "Order Dismissing Appeal."  On February 13, 2020, after this court's August 26, 2019 acceptance of certiorari, Tigilau filed a document requesting information regarding this correction.

[11]  But see supra notes 9 and 13.

10

> June 4, 2019 order and HRAP Rule 24(c),
> dismissal of the appeal is warranted.
>
> Therefore, IT IS HEREBY ORDERED that the appeal
> is dismissed.[12]
>
> IT IS FURTHER ORDERED that all pending motions
> are dismissed.[13]

The ICA concluded that dismissal of Tigilau's appeal was warranted based on its prior rulings and HRAP Rule 24(c), and it dismissed Tigilau's appeal.

---

[12]    The ICA also stated as follows:

> (5)    On February 27, 2019, the district court clerk filed the record on appeal and the appellate clerk notified Tigilau that the statement of jurisdiction and opening brief were due on or before March 11, 2019, and April 8, 2019, respectively;
>
> (6)    Tigilau failed to timely file either document or request an extension of time, and therefore is in default;
>
> (7)    On May 20, 2019, Tigilau filed a late statement of jurisdiction without the court's permission, and a motion for extension of time for the opening brief[.]

As Tigilau had never been placed on notice that these issues could result in dismissal of her appeal, which would have made dismissal on any of these bases improper, see In re Marn Family Litig., 132 Hawai'i 165, 170, 319 P.3d 1173, 1178 (2014), and because the language of the ICA's dismissal order indicates that dismissal of Tigilau's appeal was based solely HRAP Rule 24, we do not further discuss these matters.

[13]    Tigilau had filed a motion for a thirty-day extension to file her opening brief on May 20, 2019 and a motion for the clerk of the court to give her the addresses of the other parties on June 18, 2019.

## C. Certiorari application

On July 10, 2019, Tigilau filed an application for writ of certiorari. In relevant part, Tigilau explains that she "feels that this Honorable Court is prejudice[d] against her for not having the funds necessary to pay [the appellate filing fee]." Tigilau also states she "knows that she must file a motion for leave to proceed on appeal [IFP] per court that she enters.[14] Therefore as mentioned she did file her motion for leave to proceed on appeal [IFP]."

Along with her certiorari application, Tigilau filed a motion to proceed IFP on appeal, which we grant.

## III. Standards of review

## A. Interpretation of statutes and court rules

"When interpreting rules promulgated by the court, principles of statutory construction apply." Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997) (quoting State v. Baron, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995)). "The standard of review for statutory construction is well-established. The interpretation of a

---

[14] It thus appears Tigilau's understanding was that the IFP motion must be filed in the court she seeks to access, which is not an unreasonable understanding.

12

statute is a question of law which this court reviews de novo."

Id. (quoting State v. Wells, 78 Hawai'i 373, 376, 894 P.2d 70,

73 (1995)).

**B.    Ruling on a motion to proceed IFP**

A court's ruling on a motion to proceed IFP is reviewed for

an abuse of discretion.  Blaisdell, 113 Hawai'i at 319, 151 P.3d

at 800.  An abuse of discretion occurs if a trial court has

clearly exceeded the bounds of reason or has disregarded rules

or principles of law or practice to the substantial detriment of

a party litigant.  State v. Davia, 87 Hawai'i 249, 253, 953 P.2d

1347, 1351 (1998) (internal quotation mark and citations

omitted).

## IV.   Discussion

**A.    Under the circumstances, the ICA abused its discretion in requiring Tigilau to file an IFP motion in the district court, by denying her second IFP motion, and by dismissing her appeal**

Tigilau filed two motions to proceed IFP on appeal.  The

ICA denied both motions based solely on language in HRAP Rule

24(a), which provides in part that "[a] motion for leave to

proceed on appeal [IFP] . . . shall ordinarily be made in the

first instance to the court . . . appealed from."

In denying Tigilau's two IFP motions, the ICA ordered that

she either file an IFP motion in the district court within ten

days or pay filing fees in full. The ICA also stated in both orders that her failure to comply could result in a dismissal of Tigilau's appeal pursuant to HRAP Rule 24(c). As the ICA orders denying Tigilau's first and second IFP motions recognized, however, HRAP Rule 24 does not require a litigant to file an IFP motion in the court appealed from.

Although subsection (a) of HRAP Rule 24 provides (with emphasis added) that an IFP motion "shall ordinarily be made in the first instance to the court . . . appealed from[,]" it also provides that "[a] party to an action in the . . . district . . . court . . . who desires to proceed on appeal [IFP] may file in the appellate court a motion for leave to so proceed" and that an IFP motion filed in an appellate court "shall show that application to the court appealed from for the relief sought is not practicable" if an IFP motion has not been filed in the court appealed from. Thus, HRAP Rule 24(a) does not actually require the filing of an IFP motion in the lower court, and it allows an IFP motion to be granted if filing a motion in the court appealed from would not be practicable.[15]

---

[15] The dissent asserts that HRAP Rule 24(a) is unambiguous. For these reasons, we disagree.

14

In this regard, the language of HRAP Rule 24(a) indicating that an IFP motion shall <u>ordinarily</u> be made in the first instance to the court appealed from contemplates that the appellant was a party who was required to pay some costs below. That party is usually the plaintiff.  At minimum, the structure of the rule contemplates that the court being appealed from would have greater information than the appellate court as to an appealing party's ability to pay filing fees.  This is not always the case, especially in an appeal brought by a self-represented <u>defendant</u> in an ejectment case.  An appellate court would generally be just as readily able to evaluate whether a self-represented defendant would qualify for IFP status, based on financial information submitted to the appellate court.

In addition, especially because Tigilau is a self-represented defendant appealing a writ of possession in a residential ejectment case, even if the ICA had discretion to order a remand, HRAP Rule 24(a) states that the appellant has the option of explaining why filing a motion in the lower court would not be practicable.  This option was not provided to Tigilau, and the ICA had the discretion to address practicability on its own accord.

15

Moreover, ordering an appellant to file an IFP motion in the district court does not promote efficiency.  It takes very little time for an appellate court to address and decide an IFP motion.  An appeal of a judgment and writ of possession is an urgent matter.  And whether or not an appeal concerns an urgent matter, the interests of judicial economy make an order requiring an appellant to refile an IFP motion in a lower court even more impracticable, when the appellate court is readily able to evaluate an appellant's IFP application.  Unless there is a real concern that the financial information provided by an appellant is misleading or insufficient, and the appellate court has reason to believe that the lower court may be in a better position to evaluate the information, there would be little reason to require that an appellant first file a motion in the lower court.

In Tigilau's case, because of the urgency of her appeal in relation to the time it would take the district court to finally determine whether she would be granted IFP status, the ICA should have exercised its discretion to rule on her IFP motion. The ICA entered orders with instructions.  The ICA orders would have required Tigilau to ascertain where and how to file an IFP motion in the district court.  If such motion were filed, a

16

district court clerk would need to refer it to a district court judge, preferably the judge that entered the writ and judgment of possession. The district court judge would then need to review and decide the motion. The judge or clerk would thereafter need to enter an order granting or denying the motion, and also file a notice of its entry so that the ICA would be alerted. If the IFP motion were granted, the order granting IFP status would then need to come to the attention of ICA staff or judges so that the appeal could proceed. If the IFP motion were denied, Tigilau would have had the option of then filing another motion in the ICA pursuant to HRAP Rule 24(a). Almost all of these intermediary steps would be avoided if the ICA ruled on the motion in the first instance, as it has discretion to do.[16]

---

[16] The dissent cites to Goo v. Arakawa, 132 Hawai'i 304, 317, 321 P.3d 655, 668 (2014), for the proposition that "[r]emand to the lower court [for factual determinations] protects the 'orderly operation of the judicial system' by leaving fact-finding powers with the trial courts and review of the trial courts' discretion to the appellate courts." Goo addressed situations where a fact-intensive inquiry could be required in order to determine whether mootness on appeal was the result of happenstance or a party's voluntary action; Goo indicated that in such circumstances, it would be appropriate for an appellate court to remand the case to the trial court for its evaluation. 132 Hawai'i at 317-18, 321 P.3d at 668-69. Goo addressed a special situation in which the appellate court may lack sufficient information. In this case, the ICA had sufficient information to rule on Tigilau's IFP motion. Therefore, Goo is inapposite.

Thus, under the circumstances of this case, with Tigilau being a self-represented defendant, and because she submitted sufficient financial information, the ICA should have addressed her IFP motions without requiring her to file a motion in district court.

Further, it is also significant that Tigilau did not cite to HRAP Rule 24 in either of her IFP motions as a basis for her request for waiver of costs on appeal. The ICA analyzed Tigilau's IFP motions strictly according to the language of HRAP Rule 24(a). HRS § 607-3, however, also provides an independent basis for the grant of an IFP motion.[17] Blaisdell analyzed a self-represented prisoner's IFP motion in a civil case solely under the "onerous" standard of HRS § 607-3, 113 Hawaiʻi at 319, 151 P.3d at 800, despite the existence of a specific circuit court rule governing IFP requests based on "good cause."[18] Based on the financial information provided in Tigilau's second IFP motion, payment of appellate filing fees would clearly have been "onerous" to Tigilau, as "excessively burdensome so as to cause

---

[17] See supra note 2. Thus, an amendment to HRAP Rule 24 was not necessary for the ICA to address Tigilau's motion, as maintained by the dissent. We agree with the dissent, however, that HRAP Rule 24 should be amended to obviate the inefficiencies inherent in the structure of the rule.

[18] See supra note 3.

18

hardship." Id. Hence, the ICA abused its discretion in denying Tigilau's second IFP motion based on both HRAP Rule 24(a) and HRS § 607-3.[19]

The ICA's dismissal of Tigilau's appeal, based on its denial of her second IFP motion, which should have been granted, contravenes the policy of determining cases on the merits. The ICA therefore also abused its discretion in dismissing Tigilau's appeal.

**B.** **When courts have discretion in applying court rules or statutes, they must consider the access to justice principle of reducing barriers to the civil justice system**

Tigilau also argues on certiorari that "Defendant-Appella[nt] Christy Tigilau doesn't have any funds and the courts know that. They know that Christy Tigilau Defendant-Appella[nt] doesn't have any funds therefore she feels the courts won't let her state her side of the case which is a denial of access to this court." Tigilau also highlights the

---

[19] The dissent maintains that HRS § 607-3 is not an independent basis for granting an IFP motion because HRAP Rule 24(a) merely sets out a process for invoking HRS § 607-3, which provides the standard for granting an IFP motion. Yet, HRAP Rule 24(a) is much more than a mere rule of process, as it requires an appellant to also show "the party's inability to pay the required filing fees or to give security for costs, the party's belief that [the party] is entitled to redress, and a statement of the issues that the party intends to present on appeal." Thus, HRAP Rule 24(a) provides standards for IFP status that do not exist in HRS § 607-3, which only requires a showing that payment of filing fees would be "onerous."

19

fact that she is not an attorney and relies on Haines v. Kerner, 404 U.S. 519 (1972) (per curiam), for the proposition that courts should be more lenient with self-represented litigants than with trained attorneys.

In Haines, the United States Supreme Court made clear that complaints by self-represented litigants are to be held "to less stringent standards than formal pleadings drafted by lawyers[.]" 404 U.S. at 520.  Similarly, a fundamental tenet of Hawai'i law is that submissions of self-represented litigants should be interpreted liberally.  Waltrip, 140 Hawai'i at 239, 398 P.3d at 828.  In addition, this court has stated that "[i]n some instances, a plaintiff's [self-represented] status might warrant a court's refusal to impose any costs or attorney's fees," although "the right of self-representation is not . . . a license not to comply with the relevant rules of procedural and substantive law."  Lepere v. United Pub. Workers, Local 646, AFL-CIO, 77 Hawai'i 471, 473 n.2, 887 P.2d 1029, 1031 n.2 (1995) (citations, internal quotation marks, and original brackets omitted).

As contended by Tigilau, the denial of IFP status to those like her affects access to justice in civil matters for those unable to afford legal representation.  Our judiciary has taken

an active role in seeking to advance access to justice in civil cases, especially for self-represented litigants. Rule 21 (2015) of the Rules of the Supreme Court of the State of Hawai'i created the Hawai'i Access to Justice Commission, whose purposes under subsection (b) include reducing barriers to the civil justice system by giving input on existing laws and court rules that may affect meaningful access to justice for low-income Hawai'i residents (subsection 7) and encouraging judges to take a leadership role in expanding access to civil justice (subsection 8).

This court has long adhered to the policy of affording litigants the opportunity to be heard on the merits whenever possible. Morgan v. Planning Dep't, 104 Hawai'i 173, 180-81, 86 P.3d 982, 989-90 (2004) (citation omitted). Yet, the dissent supports an application of HRAP Rule 24 that would deny Tigilau any review of the merits her appeal.[20] The dissent supports the ICA's dismissal of appeals "where litigants have not paid the appropriate fees or secured IFP status[,]" even if a litigant

---

[20] We note that pursuant to HRS § 641-1(a) (2016), civil appeal deadlines are prescribed by court rule. As Tigilau was appealing January 10, 2019 decisions, the ICA would have been without appellate jurisdiction over a new notice of appeal filed by Tigilau after the ICA's June 20, 2019 dismissal of her appeal. Thus, adoption of the dissent's position would have denied Tigilau access to our appellate courts regarding the merits of her appeal.

21

could have secured IFP status if the ICA had chosen to exercise its discretion to rule on the IFP motion itself.

Our state courts should embrace access to justice principles in practice. In furtherance of such principles, we therefore now hold that, consistent with the fundamental tenet of Hawai'i law that submissions of self-represented litigants should be interpreted liberally, Waltrip, 140 Hawai'i at 239, 398 P.3d at 828, when courts have discretion in applying court rules or statutes, they must consider the access to justice principle of reducing barriers to the civil justice system for self-represented litigants.

## V.  Conclusion

We therefore grant Tigilau's July 10, 2019 motion for IFP status on appeal, vacate the ICA's June 20, 2019 "Order Dismissing Appeal," and remand this case to the ICA for further proceedings consistent with this opinion.

| | |
|---|---|
| Christy Tigilau<br>petitioner pro se | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

